IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
Knoxville Division

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FELLOWSHIP ASSOCIATION OF ) <br>    RESOURCE MINISTRIES, INC., ) <br> ) <br>    Serve: **Bradley H. Hodge, Esq.,** ) <br>             **Registered Agent** ) <br>             **900 South Gay St., Ste. 2300** ) <br>             **Knoxville, TN 37902-1861** ) <br> ) <br> and ) <br> ) <br> SEBASTIAN A. GILLETTE, ) <br> ) <br>    Serve: **Sebastian A. Gillette** ) <br>             **560 Prestwick Ridge Way** ) <br>             **Apt. 98** ) <br>             **Knoxville, TN 37919** ) <br> ) <br>             Defendants. ) <br> _____) | C.A. No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

The plaintiff, National Casualty Company ("NCC"), by counsel, states the following in support of its Complaint for Declaratory Judgment:

1. This action seeks declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and Title 28, Section 2201 of the United States Code, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between NCC and the defendants, Fellowship Association of Resource Ministries, Inc. ("FARM") and Sebastian A. Gillette ("Gillette," and collectively with FARM, the "Defendants").

## JURISDICTION

2. The Court has original jurisdiction in this action under Title 28, Section 1332 of the United States Code, as it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## PARTIES

3. NCC is an insurance company organized and existing under the laws of the State of Wisconsin, with its principal place of business in Scottsdale, Arizona. NCC, therefore, is a citizen of the State of Wisconsin and of the State of Arizona. It is not a citizen of the State of Tennessee.

4. FARM is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in Sevierville, Tennessee. FARM, therefore, is a citizen of the State of Tennessee, and it is not a citizen of the State of Wisconsin or the State of Arizona.

5. Gillette is a natural person domiciled in Knoxville, Tennessee. He is therefore a citizen of the State of Tennessee, and he is not a citizen of the State of Wisconsin or the State of Arizona.

## VENUE

6. The venue of this action is properly predicated upon Section 1391(A) of Title 28 of the United States Code, in that jurisdiction is founded on diversity of citizenship and this action is brought within the judicial district and division in which at least one of the Defendants resides, where at least one of the Defendants does business, and/or in which a substantial part of the events or omissions giving rise to the claim(s) alleged herein occurred.

## STATEMENT OF FACTS

7. NCC issued an insurance contract to FARM, contract number CAO0242686, for the contract period July 12, 2011 to July 12, 2012 (the "Insurance Contract").

8. A true, certified copy of the Insurance Contract is appended hereto as Exhibit "1."

9. The Insurance Contract provided commercial auto liability insurance to FARM, subject to the contract's terms, conditions, limitations and exclusions.

10. At all times relevant to this action, FARM operated a medical transport business that provided non-emergency medical transportation services to disabled and elderly patients.

11. As part of its business, FARM operated specially equipped vans to transport disabled or elderly patients to various appointments.

12. On or about March 20, 2012, one of FARM's patients was Gillette.

13. At all times relevant to this action, Gillette was disabled, as he is paraplegic.

14. Gillette thus was, and is, wheelchair-bound.

15. On March 20, 2012, FARM's employee or agent, Peter Tanner ("Tanner"), drove one of FARM's specially equipped vans, vehicle identification number 2D4GP44L03R235677 (the "Van"), to Gillette's residence to take Gillette to a medical appointment.

16. The Van was equipped with a lift at its rear for loading wheelchair-bound patients into the Van.

17. Part of Tanner's job was to assist Gillette and other patients in embarking the Van.

18. In order to assist Gillette in embarking the Van, Tanner had to secure Gillette and his wheelchair onto the Van's lift.

19. Once Gillette, seated in his wheelchair, was positioned on the Van's lift, Tanner had to secure Gillette and the wheelchair in place with certain straps attached to the Van or the lift.

20. Tanner reportedly did not secure Gillette sufficiently when he picked Gillette up on March 20, 2012.

21. When Tanner returned to the driver's side of the Van after positioning Gillette on the lift, Gillette's wheelchair reportedly rolled backward and off of the lift.

22. Gillette then reportedly tumbled backward in his wheelchair, striking the pavement and, reportedly, sustaining certain injuries (the "Accident").

23. On or about March 29, 2012, FARM notified NCC of the Accident and requested liability insurance benefits under the Insurance Contract in connection with the Accident (the "Claim").

24. NCC then investigated the Accident and the Claim.

25. By letter to FARM dated April 17, 2012, NCC disclaimed liability insurance coverage for the Claim based on the Insurance Contract's exclusion for medical or other professional services.

26. A true copy of NCC's April 17, 2012 letter to FARM is appended hereto as Exhibit "2."

27. On or about March 6, 2013, Gillette filed suit against FARM in the Circuit Court for Knox County, Tennessee, cause number 2-108-13, in an action styled <u>Sebastian Arnez Gillette v. Fellowship Association of Resource Ministries, Inc.</u> (the "Underlying Action").

28. A true copy of Gillette's Complaint filed in the Underlying Action is appended hereto as Exhibit "3."

- 4 -
Case 3:13-cv-00291-TAV-CCS   Document 1   Filed 05/22/13   Page 4 of 9   PageID #: 4

29. Gillette alleges in the Underlying Action that he was injured due to Gillette's failure to properly secure Gillette and his wheelchair to the lift. (See Exh. 3, ¶¶ 6-12.)

30. In the Underlying Action, Gillette seeks $250,000 in damages based on injuries he allegedly sustained in the Accident. (See Exh. 3, *ad damnum*.)

31. FARM reported the Underlying Action to NCC, and again requested defense and indemnity benefits under the Insurance Contract in connection with the Accident, the Claim and the Underlying Action.

32. By letter to FARM dated March 26, 2013, NCC agreed to defend FARM in the Underlying Action subject to a full and complete reservation of all of NCC's rights under the Insurance Contract, at law and in equity.

33. A true copy of NCC's March 26, 2013 letter to FARM is appended hereto as Exhibit "4."

34. NCC is now defending FARM in the Underlying Action subject to that full, complete reservation of all of its rights.

35. NCC maintains that it does not have a duty to defend FARM in the Underlying Action, and that it does not have a duty to pay any judgment that Gillette might be awarded in the Underlying Action.

36. For the reasons alleged further below, declaratory judgment should be entered in NCC's favor, holding that it has no duty to defend FARM in the Underlying Action and no duty to pay indemnity benefits to FARM, Gillette, or anyone else in connection with the Accident, the Claim, and/or the Underlying Action.

## REQUEST FOR DECLARATORY JUDGMENT – THE CLAIM IS EXCLUDED FROM INSURANCE COVERAGE UNDER THE INSURANCE CONTRACT'S EXCLUSION FOR MEDICAL OR OTHER PROFESSIONAL SERVICES

37. NCC hereby restates the allegations set forth in Paragraphs 1-36 of this Complaint, as if those paragraphs were re-alleged verbatim here.

38. The Insurance Contract, provides, in part, that NCC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." (Exh. 1, Bus. Auto Cov. Form, sec. II.A.)

39. The Insurance Contract further provides, in part, that NCC has "the right and duty to defend any 'insured' against a 'suit' asking for such damages. . . . However, [NCC has] no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (Id.)

40. The Insurance Contract also provides, in part, that "[t]his insurance does not apply to . . . '[b]odily injury' resulting from the providing or failure to provide any medical or other professional services. This includes the handling of any patient, and movement into, onto, out of, or while within any auto." (Exh. 1, Med'l or Other Prof'l Servs. Excl. End.)

41. The Insurance Contract defines "auto" to mean a "land motor vehicle . . . designed for travel on public roads. . . ." (Exh. 1, Bus. Auto Cov. Form, sec. V.B.1.)

42. The Van is an "auto" as defined in the Insurance Contract.

43. Gillette qualifies as a patient within the Insurance Contract's meaning, as he alleges that, at the time of the Accident, he "was being transported to a medical appointment in Knoxville, Tennessee. . . ." (Exh. 3, ¶ 5.)

44. Gillette further alleges that the Van was specially outfitted as "a transportation van equipped with a wheelchair lift." (Id.)

45. Gillette also alleges that at the time of the Accident he had been "placed on the lift-equipped [V]an by [Tanner], but [Tanner] failed to strap [Gillette] down once [Gillette] was placed in the [V]an." (Exh. 3, ¶ 6.)

46. Gillette alleges that due to Tanner's purported failure to strap him down, "the wheelchair that [Gillette] was in fell backwards and rolled out of the [V]an's lift, landing on the pavement rendering [Gillette] unconscious." (Exh. 3, ¶ 7.)

47. Gillette alleges that Tanner was negligent in purportedly failing to strap Gillette down, and that this alleged negligence resulted in injuries to Gillette. (See Exh. 3, ¶¶ 8-12.)

48. Assuming arguendo that the Underlying Action qualifies as a "suit" alleging "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto," Gillette's Complaint alleges "bodily injury" resulting from the providing or failure to provide medical or other professional services, specifically the handling of a patient and the patient's movement into and/or onto an auto.

49. The Complaint's allegations thus implicate the Insurance Contract's exclusion for medical or other professional services, which excludes insurance coverage for the Accident, the Claim, and the Underlying Action.

50. Declaratory judgment should therefore be entered in NCC's favor for at least these reasons.

WHEREFORE, NCC respectfully prays that this Court enter an Order, ADJUDGING, ORDERING, and DECREEING that:

(1) NCC has no duty to defend FARM in the Underlying Action;

- 7 -
Case 3:13-cv-00291-TAV-CCS   Document 1   Filed 05/22/13   Page 7 of 9   PageID #: 7

(2) NCC has no duty to pay indemnity insurance benefits to FARM, Gillette, or anyone else in connection with the Accident, the Claim and/or the Underlying Action; and

(3) NCC is awarded all such other and further relief as the Court may deem appropriate and just.

Respectfully submitted,

NATIONAL CASUALTY COMPANY

By: MIDKIFF, MUNCIE & ROSS, P.C.

_____
Of Counsel

Brian J. Rife, Esquire (Bar No. 023853)
Midkiff, Muncie & Ross, P.C.
110 Piedmont Avenue, Suite 202
Bristol, Virginia 24201
(276) 644-9600
(276) 644-4679 (facsimile)
brife@midkifflaw.com
*Counsel for National Casualty Company*

Kevin T. Streit, Esquire (Court admission application to be submitted)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place, Suite 420
Richmond, Virginia 23236
(804) 560-9600
(804) 560-5997 (facsimile)
kstreit@midkifflaw.com
*Counsel for National Casualty Company*

Joanna M. Roberto, Esquire (*Pro Hac Vice* motion to be submitted)
Goldberg Segalla, LLP
100 Garden City Plaza, Suite 225
Garden City, New York 11530-3203
(516) 281-9800

(516) 281-9801 (facsimile)
jroberto@goldbergsegalla.com
*Co-Counsel for National Casualty Company*